Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner with minor technical modifications as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties at the hearing before the deputy commissioner and in a Pre-trial Agreement dated 14 March 1995 as
STIPULATIONS
1. All parties are properly before the court, and the court has jurisdiction of the parties and of the subject matter.
2. The parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff was incarcerated in the North Carolina Department of Correction at the time of the incident alleged in this action.
4. The named employees of defendant were acting within the scope of their employment at all times relevant to this action.
************
The Full Commission adopts the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. On 7 April 1992 Lieutenant Roy Adkins ordered that Inmate Charles Morrow be assigned to another bunk away from Inmate David Taylor. Inmate bunks were reassigned frequently within the unit because of homosexual activities and for other purposes. None of the inmates who had been previously reassigned had taken retaliatory assaultive action against any other inmate.
2. On 8 April 1992 at approximately 1:00 p.m., Inmates Morrow and Taylor met with Lieutenant Adkins concerning the ordered move. Lieutenant Adkins told the inmates that the move was made for administrative reasons. The move was also made due to Inmates Morrow and Taylor's homosexual activities. One of the inmates made the comment that "the snitch ratted us off." Lieutenant Adkins knew that Inmates Morrow and Taylor were angry, but Lieutenant Adkins thought their anger was directed at him. Inmates Morrow and Taylor did not make any threats towards "the snitch" or towards plaintiff. Based upon his sixteen years of experience and the facts known to him, Lieutenant Adkins did not consider it necessary to further counsel Inmates Morrow and Taylor or take other disciplinary action. The meeting "did not raise a red flag" in Lieutenant Adkins' mind.
3. At approximately 1:15 p.m. on 8 April 1992 Inmates Morrow and Taylor assaulted plaintiff while he was sleeping in his bunk in the old dormitory at the Randolph County Correctional Unit. Inmates Morrow and Taylor used a bare horseshoe and a horseshoe wrapped in a towel during the assault.
4. Inmates Morrow and Taylor had no prior history of assaultive or aggressive behavior while in prison. Neither inmate had been placed in segregation for fighting prior to the incident involving plaintiff.
5. Lieutenant Adkins had no reasonable grounds to foresee harm to plaintiff specifically. Inmates Morrow and Taylor did not threaten plaintiff in Lieutenant Adkin's presence. Plaintiff did not have a reputation as a snitch. Plaintiff had never complained to Lieutenant Adkins about Inmates Morrow and Taylor's homosexual activity. There was no evidence that plaintiff had ever complained to any other correctional officers about Inmates Morrow and Taylor's homosexual activity. Plaintiff appeared physically stronger than Inmates Morrow and Taylor.
6. Based upon his testimony, plaintiff did not have a reasonable basis for fearing assault from Inmates Morrow and Taylor.
7. After being notified of the assault by another inmate, Correctional Officer Todd Taylor and Sergeant Cosmo Spruell arrived within seconds at the scene of the fight. The officers terminated the fight promptly and secured the inmates. Plaintiff's estimate that the fight lasted five to ten minutes is not accorded any weight because he was involved in repelling the attack and other evidence presented disputes this time estimate.
8. Plaintiff was immediately taken to the unit nurse, who referred him to the emergency room. Plaintiff sustained an injury to his head requiring ten stitches. Plaintiff also sustained injuries to his back and shoulders. Plaintiff received mental health services for three months after the assault.
9. Correctional Officer Taylor was responsible for supervision of the old dormitory during the time of the attack. Only one correctional officer was required to be in the old dormitory at the time of the assault. At the time he was notified of the attack he was at the control desk dispensing medication to another inmate. The control desk did not give Correctional Officer Taylor an unobstructed of the area where the assault occurred. In addition, the televisions in the dormitory which were available for the inmates were turned on at the time of the attack, and this masked the noise from the attack.
10. There was no evidence that Correctional Officer Taylor had notice that Inmates Morrow and Taylor were angry or that they were likely to assault another Inmate.
11. At the time of the attack there were approximately two hundred inmates in the recreational yard. Inmates walked around the yard freely and many carried towels with them.
12. The horseshoe pit was approximately twenty feet from the old dormitory. It takes approximately one minute to walk from the pit to the old dormitory. The pit was partially visible from Tower 3, which is approximately thirty-five yards away from the pit. The pit was entirely visible from Tower 1, which was approximately sixty-five yards away.
13. Correctional Officers Jeff Purvis and Michael Ingold, who were responsible for the yard, and Correctional Officers Richard Dawkins, Calvin Suber, and Terry Johnson, who were responsible for the towers, had no notice that Inmates Morrow and Taylor were angry or that they were likely to attack plaintiff. The correctional officers in the towers are primarily concerned with watching the fence. These correctional officers could not provide direct supervision for every horseshoe game.
14. The horseshoe pit and horseshoes were made available to the inmates pursuant to the Randolph Correctional Unit Standard Operating Procedure for Physical Education and Life Enrichment Activities. These operating procedures comply with mandatory federal and state requirements for recreational facilities for Inmates. There had been no prior incidents of assaults with horseshoes at the Randolph Unit.
15. In the North Carolina Department of Correction Policies and Procedures for Custody and Security manual, Section 2703 (b)(1) identifies tools that are considered hazardous. These items are required to be used under the direct supervision of a certified employee, and are to be secured while not in use. The list is not an all-inclusive list and out of practicality does not list all of the every day items that could technically fall within the broad definition of a hazardous tool or item. It also does not list recreational items such as horseshoes. Direct supervision and secured storage of many every day items is not feasible.
16. At the time of the incident, there was no official check-in/check-out system for the horseshoes. The horseshoes were available to the inmates during daytime hours and were secured at night. Even if they had been subject to a check-in/check-out system or used only under direct supervision, the horseshoes could have been obtained and used as weapons.
*************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. "The general rule [is] that `a prison official is liable when he knows of, or in the exercise of reasonable care, should anticipate, danger to the prisoner, and with such knowledge or anticipation fails to take the proper precautions to safeguard his prisoners.'" Taylorv. North Carolina Department of Correction, 88 N.C. App. 446, 451,363 S.E.2d 868, 871 (1988). Defendant had a duty to protect plaintiff from reasonably foreseeable harm. Id. at 452,363 S.E.2d at 871.
2. Under the totality of the circumstances and the facts known to Lieutenant Adkins immediately prior to the attack, it was not reasonably foreseeable that Inmates Morrow and Taylor would take retaliatory assaultive action against plaintiff or any other Inmate. Lieutenant Adkins exercised reasonable judgment and care to protect plaintiff from reasonably foreseeable harm. Lieutenant Adkins was not negligent in his actions on 8 April 1992.
3. Under the totality of the circumstances and the facts known to Correctional Officer Taylor immediately prior to the attack, Correctional Officer Taylor had no reason to prohibit Inmates Morrow and Taylor from entering the dormitory and proceeding to plaintiff's bunk. Upon notification of the attack, Correctional Officer Taylor's response was prompt and appropriate. Correctional Officer Taylor exercised reasonable judgment and care to protect plaintiff from reasonably foreseeable harm. Correctional Officer Taylor was not negligent in his actions on 8 April 1992.
4. Under the totality of the circumstances and the facts known to Correctional Officers Cosmo Spruell, Jeff Purvis, Michael Ingold, Richard Dawkins, Calvin Suber, and Terry Johnson immediately prior to the attack, reasonable care was exercised in fulfilling their assigned duties, and they exercised reasonable judgment and care to protect plaintiff from reasonably foreseeable harm. None of these officers were negligent in his actions on 8 April 1992.
5. Given that the attack was not foreseeable even by plaintiff, it is reasonable to believe that the correctional officers at Randolph Correctional Unit had no actual or constructive notice of Inmates Morrow and Taylor's assaultive intent, and that the assault was not reasonably foreseeable to the correctional officers.
6. Based upon prior experience which included no incidents of attacks with horseshoes, and the totality of the circumstances, named employees Superintendent Gary Miller and Correctional Office David Gray exercised ordinary care in allowing access to recreational equipment without direct and immediate supervision. The failure to classify the horseshoes as a hazardous tool requiring direct supervision and secured storage was not negligent.
7. The failure to implement a check-in/check-out system for the horseshoes was not a proximate cause of the attack upon plaintiff. Even with such a system, the attack could have been successfully completed.
8. The injuries plaintiff sustained on 8 April 1992 when he was assaulted by fellow Inmates Charles Morrow and David Taylor was not reasonably foreseeable, and was not the result of negligence or the failure of any named or unnamed employee, agent, servant, or representative of defendant North Carolina Department of Correction to exercise due and reasonable care in its duty to protect inmates from assault by other inmates.
**************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. Plaintiff's claim is hereby DISMISSED with prejudice.
2. Each side shall bear its own costs.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _______________ COY M. VANCE COMMISSIONER
S/ _______________ J. RANDOLPH WARD COMMISSIONER
BSB:be